## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PATRICK MICHAUD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 20-cv-11999-DJC** |
| | ) |
| **GABRIEL SOLOMON, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                    **May 29, 2021**

### I.      Introduction

Plaintiff Patrick Michaud ("Michaud") has filed this lawsuit against Defendants Gabriel Solomon ("Solomon") d/b/a Solar Media Team ("SMT"), Renovation Referrals, LLC f/k/a Solomon & Associates, LLC ("Renovation") (collectively, the "Solomon Defendants"), Mitchell Gordon ("Gordon") and Jane Doe(s) & John Doe(s) (collectively, "Does") alleging violations of the Massachusetts Telemarketing Solicitation Act, Gen. Law. c. 159C ("MTSA") (Counts I, VI, VII, XI), invasion of privacy by intrusion upon seclusion (Counts II, VIII, VXII[1]), violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") (Counts III, IX, XIII), violations of Mass. Gen. Law. c. 93A (Counts IV, V). D. 13-1. The Solomon Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). D. 5. For the reasons stated

---

[1]It appears that this Count is misnumbered in the second amended complaint, D. 13-1 at 16, and was intended to be Count XII. Also, it appears that the numbering of the claims skipped Count X. Id. at 15.

below, the Court ALLOWS the motion.  Given that the Court considered the proposed second amended complaint, D. 13-1, in resolving the pending motion to dismiss, the Court DENIES Michaud's first motion to amend, D. 13, as moot.  As to Michaud's subsequent motion to amend, D. 19, the Court DENIES that motion as futile.

## II.    Standard of Review

### A.    Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2)

Michaud bears the burden of establishing that the forum state may exercise personal jurisdiction over the defendant.  Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020).  In ruling on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, a district court must apply the prima facie standard of review.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under the prima facie standard, a plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long arm statute and the Due Process Clause of the Constitution," to meet their burden pursuant to Fed. R. Civ. P. 12(b)(2).  Id.  (citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)).  The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings.  Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster–N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  In doing so, the Court will "not credit conclusory allegations or draw farfetched inferences," Ticketmaster, 26 F.3d at 203, and must keep in mind that the plaintiff needs to "do more than simply surmise the existence of a favorable factual scenario; [he] must verify the facts alleged through materials of evidentiary quality." Killion v. Commonwealth Yachts, 421 F. Supp. 2d 246, 252 (D. Mass. 2006)

(quoting <u>Barrett v. Lombardi</u>, 239 F.3d 23, 27 (1st Cir. 2001)).  The Court must also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." <u>Mass. Sch. of Law</u>, 142 F.3d at 34.

      **B.**     <u>**Motions to Amend**</u>

Fed. R. Civ. P. 15(a) "mandates that leave to amend is to be 'freely given when justice so requires' . . . unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" <u>Steir v. Girl Scouts of the USA</u>, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P. 15(a)(2) and <u>Resolution Trust Corp. v. Gold</u>, 30 F.3d 251, 253 (1st Cir. 1994)).  Rule 15(a)'s "liberal amendment policy . . . does not mean that leave will be granted in all cases." <u>Acosta-Mestre v. Hilton Int'l of P.R.</u>, 156 F.3d 49, 51 (1st Cir. 1998) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1487, at 611 (2d ed. 1990)). "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." <u>Boston & Me. Corp. v. Town of Hampton</u>, 987 F.2d 855, 868 (1st Cir. 1993), <u>overruled on other grounds by</u> <u>Educadores, Puertorriqueños en Acción v. Hernandez</u>, 377 F.3d 61 (1st Cir. 2004).

**III.**    **Factual Background**

The following summary is based upon the allegations in the proposed second amended complaint, D. 13-1, and are presumed to be true for the purposes of resolving the Solomon Defendants' motion to dismiss.  Michaud resides in Massachusetts. D. 13-1 at ¶ 1.  Solomon is a Florida resident and owns Renovation, Solomon & Associates d/b/a SMT. <u>Id.</u> at ¶ 2.  Solomon & Associates is a Florida corporation that changed its name in October 2019 to Renovation Referrals LLC. <u>Id.</u> at ¶ 3.  Renovation Referrals LLC is a Florida corporation that upon information and belief changed its name to Solomon & Associates in 2019. <u>Id.</u> at ¶ 4.  Gordon is a resident of

Florida and allegedly was an employee of Solomon and his company in March 2017. <u>Id.</u> at ¶ 5. The Does are individuals and/or corporations with unknown residences. <u>Id.</u> at ¶ 6. At all relevant times, Defendants engaged in the business of promoting, marketing and/or selling home improvement products and services. <u>Id.</u> at ¶ 11.

At all relevant times, Michaud's personal cell phone number, 617-290-xxxx, has been registered on the "do not call list" maintained by the Federal Trade Commission ("FTC"). <u>Id.</u> at ¶ 12. Calls registered with the FTC are automatically included on the Massachusetts "do not call list." <u>Id.</u> at ¶ 13. On March 27-29, 2017, Michaud received at least six calls (and other prior calls from "blocked or spoofed numbers") to his personal cell phone from the Defendants either working in concert and/or their agents or under the direction of Solomon and/or Solomon & Associates while Michaud was at his law office or other places attempting to sell him solar products and services. <u>Id.</u> at ¶ 14. Gordon allegedly worked under the direction and control of Solomon and SMT which is now Renovations. <u>Id.</u> at ¶ 15. During one of the calls, the caller referred Michaud to a person named "Junior" who requested Michaud's social security number claiming, "it was safe to do so" and that he would not do anything with it. Michaud was also referred to Gordon who requested that Michaud send his electrical bill to Gordon's company. <u>Id.</u> at ¶ 16. Gordon represented during calls with Michaud that he worked for MST and Solar Solutions, never referring to Solomon & Associates or Renovation when claiming to be calling from SMT and Solutions. <u>Id.</u> at ¶ 17. Gordon later represented working for Sunenergy. <u>Id.</u> at ¶ 18. Certificates issued from the state of Florida as well as company websites and Gordon's own representations show that several companies including Solomon & Associates and/or SMT employed Gordon during the relevant time frame. <u>Id.</u> at ¶ 19. Upon information and belief, Gordon may have worked for both Solomon d/b/a SMT and Sunenergy, but represented to Michaud that he worked for SMT when he called

and for SMT and Solar Solutions during subsequent calls.  Id. at ¶ 20.  Certificates issued from the

state of Florida show that Solomon, as owner of SMT, certified that Gordon was employed by him

d/b/a SMT as a telemarketer.  Id. at ¶ 21.  Solomon is the owner and manager of Solomon Solutions

and Renovation and Michaud alleges that he directly supervised Gordon and personally authorized

Gordon's conduct including ensuring that he followed a script written by Solomon.  Id. at ¶ 23.

## IV.   Procedural History

Michaud instituted this action in Middlesex Superior Court, and Defendants removed the

matter to this Court on November 6, 2020.   D. 1.  The Solomon Defendants have now moved to

dismiss.  D. 5.  Michaud has twice moved to amend.  D. 13 and D. 19.  The Court heard the parties

on the pending motions and took these matters under advisement.  D. 27.

## V.   Discussion

The Court turns first to the Solomon Defendants' motion to dismiss.[2]

### A.   Personal Jurisdiction

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal

court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the

forum state."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st

Cir. 2002) (internal quotation marks omitted).  Accordingly, this Court may only exercise personal

jurisdiction within the limits set by Massachusetts' long-arm statute and the due process clause of

the Constitution.  Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir.

1997).  Here, "[b]ecause the [Massachusetts] long-arm statute imposes specific constraints on the

exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a

---

[2] To the extent that Michaud seeks to have the Court deny the motion to dismiss on timeliness grounds, D. 10 at 2, the Court declines to do so for the reasons stated in the Solomon Defendants' memorandum.  D. 5-4 at 2-4.

determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017).

If the statutory burden is met, constitutional due process requires that a non-resident defendant "ha[s] certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  This constitutional guarantee of due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co., 326 U.S. at 319).

### 1.    *Massachusetts Long-Arm Statute*

Michaud argues that the Court has jurisdiction over the Solomon Defendants pursuant to the Massachusetts long-arm statute, which provides, in relevant part, for the exercise of personal jurisdiction over an individual in a cause of action "arising from the person's . . . transacting any business in this commonwealth."  Mass. Gen. L. c. 223A, § 3(a); see D. 11 at 5.  "For jurisdiction to exist under § 3(a), the facts must satisfy two requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 317 (2018) (quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)). The "transacting business" clause "is construed broadly, and courts look to whether the defendant attempted to participate in the Commonwealth's economic life." QLS Logistic Servs., LLC v. JAWS Assocs., LLC, No. 17-cv-11891-ADB, 2018 WL 5816342, at *3 (D. Mass. Nov. 6, 2018) (quoting Geis v. Nestle Waters N. Am., Inc., 321 F. Supp. 3d 230, 238 (D. Mass. 2018)).  "The 'transacting business' test under

section 3(a) is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party . . . with a view to determining whether 'the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable." Roy v. FedEx Ground Package Sys., Inc., No. 17-cv-30116-KAR, 2018 WL 2324092, at *5 (D. Mass. May 22, 2018) (quoting Lyle Richards Int'l, Ltd., 132 F.3d at 112-13).  Pursuant to the long-arm statute's "arising from" requirement, "a claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." Tatro, 416 Mass. at 771.  "The inquiry ultimately boils down to a 'but for' causation test which asks '[d]id the defendant's contacts with the Commonwealth constitute "the first step in a train of events that result[ed] in the personal injury."'" Access Now, Inc. v. Otter Prod., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting Lyle Richards Int'l, Ltd., 132 F.3d at 114).

Here, Michaud argues that Defendants "had continuous business with Massachusetts directly by and through their agents." D. 13-1 at 2.  The Solomon Defendants, on the other hand, aver that in March 2017, they had no clients requesting calls into Massachusetts and thus were not making calls into Massachusetts at that time.  D. 5-1 (Solomon Aff.) at ¶ 14.  Moreover, Gordon was not employed by Solomon or his companies at the time of the specifically identified calls here and the Solomon Defendants never made or directed anyone to make calls to Michaud's phone number.  Id. ¶¶ 18-22.   Even in reading the "transacting business" language of the statute broadly, the Court does not conclude that the Solomon Defendants were attempting "to participate in the commonwealth's economic life,"  Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) (internal citations omitted), on this record.  The Solomon Defendants are wholly based in Florida with no Massachusetts based office or form of operation and there has been no showing that they

participated or directed the calls to Michaud or otherwise attempted to transact business here. Since there has not been a sufficient showing that the Solomon Defendants transacted business in Massachusetts, Michaud cannot make the further showing under the long-arm statute that his claims arose from such in-forum conduct.

### B.    General Jurisdiction

Although there has been no showing to satisfy the long-arm statute, the Court turns, in the interest of completeness, to the constitutional analysis.  See Shipley Co. v. Clark, 728 F. Supp. 818, 822 (D. Mass 1990). There are two types of personal jurisdiction to consider in the constitutional analysis:  general and specific.  Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).

For general jurisdiction, a defendant's contacts with the forum state must have been "so 'continuous and systematic' as to render them essentially at home in the forum State."  Goodyear Dunlop Tires Ops., S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe, 326 U.S. at 317). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  Centurion Networking Serv. Partners, LLC v. Barker, No. 17-cv-11304-ADB, 2018 WL 1972789, at *2 (D. Mass. Apr. 26, 2018) (internal citation and quotation marks omitted).  Such is not the case here.  Despite Michaud's arguments otherwise, D. 13-1 at 2, there is no showing here to demonstrate that the Solomon Defendants, all Florida residents with no presence here, are in any way "at home" in Massachusetts.

### C.    Specific Jurisdiction

Nor does this Court have specific personal jurisdiction over the Solomon Defendants.  "The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate:

8

1) whether the claims arise out of or are related to the defendant's in-state activities, 2) whether the defendant has purposefully availed itself of the laws of the forum state and 3) whether the exercise of jurisdiction is reasonable under the circumstances." Pesmel N. Am., LLC v. Caraustar Indus., Inc., 754 F. Supp. 2d 168, 172 (D. Mass. 2010). Michaud bears the burden of proof as to this showing. See Rodriguez v. Samsung Electronics Co., Ltd., 827 F. Supp. 2d 47, 50 (D. Mass. 2011).

      *1.    Relatedness*

      The relatedness inquiry asks whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (citation omitted). Solomon Defendants contend that Michaud has not established relatedness as to Solomon or his companies as he has not "alleged any specific facts that [Solomon] made the calls," but in fact, "it is the contrary 'Junior' and or '[Gordon]' made the calls." D. 5-4 at 10. They further contend that the calls to Michaud are "the only 'forum' related activities'" and do not relate to the Solomon Defendants. Id. While Michaud does attempt to allege that Solomon's alleged supervisory role over Gordon shows relatedness to the calls made to him in Massachusetts, the record here does not reflect this role. As previously noted, it is the plaintiff's burden to "verify the facts alleged through materials of evidentiary quality," Killion, 421 F. Supp. 2d at 252 (quoting Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001)), and this Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law at Andover, Inc., 142 F.3d at 34. In response to Michaud's production of certificates issued from the state of Florida and company website information, Solomon's affidavit and supporting payroll records, D. 5-1, 5-2, provide that while Gordon had previously been his employee, he was not employed by him during the operative

period at issue in this case, March 28-29 of 2017, as Gordon had left his employ as of March 3, 2017.  D. 5-1 at 2; D. 5-2.  Moreover, Renovation was closed on March 29, 2017 due to network issues such that no calls were made that day.  Id. at ¶ 15. The certificates and other exhibits proffered by Michaud do not contradict any of this showing by the Solomon Defendants.[3] Accordingly, Michaud has failed to show, as to the Solomon Defendants, that his claims arise out of any forum-state activities.

2.      *Purposeful Availment*

Even if Michaud had shown relatedness, he has not shown the other requisite elements for specific jurisdiction.  The purposeful availment inquiry "focuses on the defendant's intentionality," and "is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts."   Swiss Am. Bank, Ltd., 274 F.3d at 623-24 (citations omitted).  The Court focuses "on whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable.'" Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)).  "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous contacts' with the forum state."  Id. (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).

Here, Michaud has failed to establish that the Solomon Defendants have purposefully availed themselves of Massachusetts.  As attested by Solomon, in March 2017, the Solomon

---

[3]To the extent that Michaud also alleges other prior calls from "blocked or spoofed numbers" predating March 27, 2017, D. 13-1 ¶ 14, he has not alleged the timing of same and has not shown, for personal jurisdiction purposes, how such shows in-forum activity by the Solomon Defendants any more than those calls identified as having been made on March 27-29, 2017.

Defendants had no clients requesting calls into Massachusetts and thus were not making calls into Massachusetts at that time, D. 5-1 at ¶ 14, and were not making calls here to Michaud.   Further, the Solomon Defendants are based in Florida with no Massachusetts based office or form of operation.  D. 5-1 at ¶ 11.  Thus, it cannot be said that the Solomon Defendants purposefully availed themselves of Massachusetts.

3.   <em>Reasonableness</em>

Even assuming <em>arguendo</em> that Michaud had satisfied the first two prongs of analysis, he has not shown the reasonableness of subjecting the Solomon Defendants to this Court's jurisdiction.  The "Gestalt factors" for determining the reasonableness of subjecting a nonresident to a foreign jurisdiction are:  (1) the defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.  See Burger King, 471 U.S. at 477; Ticketmaster, 26 F.3d at  209.

With respect to the first of the Gestalt factors, the Solomon Defendants' burden of appearing, the Court concludes that there would be some burden on the Solomon Defendants, Florida residents, to appearing here, but such burden would not be significant.  Although the need to defend an action in a foreign jurisdiction "is almost always inconvenient and/or costly. . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir.1994).  The second factor, concerning the forum state's interest in adjudicating the dispute, weighs against keeping the lawsuit against the Solomon Defendants in Massachusetts.  As the forum state, Massachusetts has a demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders.  See Ticketmaster,

26 F.3d at 211; Keeton, 465 U.S. at 776.  Nevertheless, "the Commonwealth's interest in [this] litigation *sub judice* is arguably lessened by the doubts surrounding whether [the Solomon Defendants'] act can be said to have been committed in the forum." Ticketmaster, 26 F.3d at 211. As previously discussed, Gordon was not employed by the Solomon Defendants during the operative period and the Solomon Defendants do not have a presence here.  Accordingly, the Commonwealth's interest in adjudicating this dispute is substantially undercut by the doubts surrounding the direct contacts between Solomon Defendants and the calls to Michaud in Massachusetts.

The third Gestalt factor to consider is Michaud's interest in obtaining convenient and effective relief.  The First Circuit has repeatedly observed that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395.  This factor, however, does not weigh heavily in favor of maintaining the litigation in Massachusetts for the aforementioned reasons.

The fourth Gestalt factor, concerning the judicial system's interest in obtaining the most effective resolution of the case, is generally considered "a wash," Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 45-46 (D. Mass. 1997) (quoting Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 719 (1st Cir. 1996)) and it is so here.

The final factor concerns the interests of affected states in promoting substantive social policies.   Even if it could be arguably said that Massachusetts has some interest in the resolution of calls made to a resident, such consideration in this case does not outweigh the balance of the other Gestalt factors or tip the balance in favor of finding that the exercise of personal jurisdiction

would be reasonable here.  Thus, on balance, the Gestalt factors weigh against the exercise of personal jurisdiction over the Solomon Defendants.[4]

> **D.**     **The Motions to Amend**

Given the Court's ruling above as to the motion to dismiss as it applied to Michaud's second amended complaint, D. 13-1, the Court denies his related motion to amend, D. 13, as moot. Since his second motion to amend, D. 19, raises no amendments that would change the showing as to personal jurisdiction over the Solomon Defendants, even considering the exhibits, D. 19-1, 19-2, the Court DENIES that motion to amend, D. 19, as futile.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS the Solomon Defendants' motion to dismiss, D. 5, and DENIES Michaud's motions to amend, D. 13 and 19.

> **So Ordered.**

> /s/ Denise J. Casper
> United States District Judge

---

[4]Having dismissed the claims against the Solomon Defendants for lack of personal jurisdiction, the Court need not reach their alternative basis for dismissal under Fed. R. Civ. P. 12(b)(6).